UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE ALEJANDRO GONZALEZ-VILORIA,<br><br>Petitioner(s),<br>v.<br><br>WARDEN OF NORTHWEST ICE PROCESSING CENTER, et al.,<br><br>Respondent(s). | CASE NO. C26-4122-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner was arrested on October 7, 2026, by U.S. Immigration and Customs Enforcement ("ICE") officers and has remained detained since then. Dkt. No. 1 ¶ 6. He filed a petition for writ of habeas corpus under 28 U.SC. § 2241. *Id.* He argues that his detention is unlawful because the Government[1] violated his constitutional right to procedural due process. *Id.* ¶¶ 13–14. The Court agrees and will therefore grant the petition and order Petitioner's immediate release.

## I. BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States in September 2022 without admission. Dkt. No. 7 ¶ 5. U.S. Border Patrol encountered him, determined he had

[1] This order refers to the Federal Respondents—the Seattle Field Officer Director of Enforcement and Removal Operations for United States Immigration and Customs Enforcement ("ICE"), the Secretary of the United States Department of Homeland Security ("DHS"), the United States Attorney General, and the Director of the Executive Office for Immigration Review —collectively as "the Government."

entered the country unlawfully, and paroled him into the United States until November 28, 2022. *Id.* ¶ 6; Dkt. No. 6-1. At that time, he was instructed to report to his local ICE office. Dkt. No. 7 ¶ 6. After Petitioner reported to the ICE office, he was issued an order of release on recognizance ("OREC") and a notice to appear, charging him with removability and instructing him to appear at an initial court hearing in May 2023. Dkt. Nos. 6-3, 6-4.

Petitioner did not appear at the May 2023 hearing, and his hearing was rescheduled for November 2024. Dkt. No. 7 ¶ 10. Petitioner appeared at an immigration court hearing in November 2024 and requested a continuance, which the court granted. *Id.* ¶ 12. Petitioner appeared for another immigration court hearing in March 2025, where the immigration judge sustained the charge of removability and set Petitioner's case for a final hearing in November 2029. *Id.* ¶ 13.

On October 7, 2026, ICE agents encountered Petitioner during enforcement operations, and searched database records to determine that he had been arrested for assault in March 2026. Dkt. No. 6-5 at 3. ICE agents believed that this arrest was a violation of Petitioner's OREC and issued an arrest warrant.[2] *Id.* ICE agents stopped Petitioner in his car, arrested him, revoked his OREC, and transported him to the Northwest ICE Processing Center, where he remains detained.[3]

On October 27, 2026, Petitioner filed a petition for a writ of habeas corpus in this Court, requesting immediate release from detention. Dkt. No. 1. The Government filed its return, and the Court finds no reason to await further briefing. For the following reasons, the Court will grant the habeas petition.

---

[2] Elsewhere in the Form I-213, a deportation officer stated that Petitioner was arrested because he had violated his OREC by failing to appear for an ICE check-in on November 30, 2024. Dkt. No. 6-5 at 4–5.

[3] The arrest warrant is dated October 7, 2026, but was not served on Petitioner until the next day, after he had already been arrested and detained. *See* Dkt. No. 6-6. Likewise, Petitioner's OREC was not revoked until the day after he had been arrested and detained. Dkt. No. 6-7.

## II. ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate, among other things, the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

### A. Petitioner Was Detained Under 8 U.S.C. § 1226(a).

To determine whether Petitioner's detention complies with due process, the Court must first determine the statutory authority governing Petitioner's detention. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008) ("Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention.").

The Government argues that Petitioner falls within the mandatory detention scheme under Section 1225(b)(2) as an applicant for admission to the United States. Dkt. No. 5 at 2–4. The Court reiterates its agreement with other courts that reject an expansion of the scope of mandatory detention under Section 1225(b)(2) to include Petitioner. Petitioner's status as a person previously released with conditions, and who has been living in this country for years, counsels against this expanded view of the Immigration and Nationality Act as amended. *See, e.g., Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1193 (9th Cir. 2026) (explaining that Section 1225(b)(2)(A) applies to "unadmitted aliens entering the United States at the border" but Section 1226 applies to "unadmitted aliens present in the interior of the country"); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 731–32 (6th Cir. 2026) (holding that Section 1225(b)(2) does not apply to noncitizens who have lived in the interior of the United States for years); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828, 856 (7th Cir. 2026) (finding that "the text, statutory context, legislative history, and long-standing Executive practice all confirm that Section 1225(b)(2)(A) applies to 'applicants for admission' who are seeking lawful entry at the border or ports of entry and not to noncitizens unlawfully living in the country's interior"); *Barbosa Da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) ("[C]onsistent with the plain text of the statutory provisions at issue here, our holding allows noncitizens like Petitioner, who are already present in the United States and are determined not to be a flight risk or danger to the community, to be released on bond under Section 1226(a)

while their removal proceedings are pending."); *Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1155 (D. Nev. 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)). "The overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-cv-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). Consistent with these cases, the Court rejects the Government's position on the applicable detention authority and finds that Petitioner falls outside the mandatory detention scheme of Section 1225(b) and was instead detained under Section 1226(a).

**B. Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was arrested and remains detained weeks later undoubtedly deprived him of an established interest in his liberty.

The Government contends that Petitioner's liberty interest is "diminished given his repeated arrests while on conditional release from ICE custody." Dkt. No. 5 at 7. The Government does not contend that Petitioner has been convicted of any crime or has any criminal charges pending, nor has it produced any records related to any alleged criminal proceedings. Rather, the records the Government *has* produced indicate that ICE officers were aware at the time of Petitioner's arrest that his criminal charges had been dismissed. *See* Dkt. No. 6-5 at 5. Moreover, the Government's documentation does not unequivocally cite Petitioner's dismissed criminal charges as the reason why he was detained, nor do they document that his OREC was revoked for

this reason. *See id.* at 3–5, Dkt. No. 6-7. The Court declines to credit the Government's unsubstantiated allegations related to Petitioner's history of dismissed criminal charges, particularly because it is not clear that those allegations bear any connection to Petitioner's arrest at the time it occurred.

That detention of a noncitizen can be constitutionally valid does not imply that it is always constitutionally valid, and the Court thus disagrees with the Government to the extent that it argues that Petitioner's liberty interest is not sufficiently robust as to be constitutionally protected. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). The Government argues that Petitioner does not have "an unqualified right to remain at large" (Dkt. No. 5 at 7), but Petitioner does not contend that he has such a right: instead, he argues that he is entitled to due process in the revocation of his OREC (Dkt. No. 1 at 3).

Accordingly, the first *Mathews* factor favors Petitioner.

**C. The Risk of Erroneous Deprivation of Liberty is High.**

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds the risk of erroneous deprivation in the absence of a pre-detention hearing is high.

The Government argues that the risk of erroneous deprivation is low because "ICE possessed concrete, contemporaneous evidence of multiple[] arrests and law violations, additionally including a missed immigration court date and a missed mandatory check-in." Dkt.

No. 5 at 8. But, as noted earlier in this order, the Government's documentation confirms that ICE officers were aware that Petitioner's criminal charges had been dismissed, and the missed check-in allegedly occurred in 2024. Dkt. No. 6-5 at 4–5. Petitioner appeared in immigration court in March 2025—after the first of Petitioner's arrests and after the alleged missed check-in—and yet the Government did not revoke Petitioner's OREC at that time. *See* Dkt. No. 7 ¶ 13. Moreover, "[t]hat the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). In the face of shifting justifications for Petitioner's arrest, the Court finds that the absence of pre-deprivation procedural safeguards leads to a high risk of an erroneous deprivation of Petitioner's liberty. Accordingly, the second *Mathews* factor favors Petitioner. *See Doe*, 787 F. Supp. 3d at 1094.

**D. The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing.

As this Court has ruled repeatedly, the Government's interest in re-detaining non-citizens previously released without a hearing is low. Although it would require the expenditure of finite resources (money and time) to provide Petitioner notice and a hearing before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

The Government argues that it would face "significant" burdens if required to provide Petitioner with advance notice and process because his re-detention was due to the "objective facts" of his criminal history and his failure to appear at prior appointments. Dkt. No. 5 at 8. The

Court disagrees that the Government's stated interest is unreasonably inhibited if a pre-deprivation hearing is required. Petitioner's alleged criminal charges were dismissed many months before Petitioner was detained and his missed check-in appointment allegedly occurred nearly two years before he was arrested. These facts undermine any suggestion that the Government's interest in revoking release for those who have been accused of conduct that, if true, would violate their conditions of release, is so high that it must be satisfied immediately.

For these reasons, the Court finds that the Government's interest in re-detaining a non-citizen previously released without a hearing is minimal: any administrative or financial burdens in providing a pre-deprivation hearing to Petitioner are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. The third and final *Mathews* factor favors Petitioner.

As the Court's review of the *Mathews* factors suggests, Petitioner's detention does not comport with due process.

## III. REMEDY

Having determined that Petitioner's detention violates his constitutional right to due process, the Court finds Petitioner's detention to be unlawful and will grant the habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the

traditional function of the writ is to secure release from illegal custody."). Although the Government posits that a post-deprivation hearing is the appropriate remedy in light of Petitioner's criminal history, it cites no case to support that proposition where, as here, the criminal charges have been dismissed. *See* Dkt. No. 5 at 10–11.

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from custody no later than November 17, 2026, on the terms of his prior OREC. The Government shall file a status report no later than November 20, 2026, to confirm Petitioner's release in compliance with this order.

Dated this 16th day of November, 2026.

Kymberly K. Evanson
United States District Judge